UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JOHN RICHARD CARTIER, | Case No. 08-CV-1323 (PJS/JJG) |
| Plaintiff, | |
| v. | |
| RYAN GEORGE, in his individual capacity and as an officer of the White Bear Lake Police Department; RYAN ARBUCKLE, in his individual capacity and as an officer of the White Bear Lake Police Department; and CITY OF WHITE BEAR LAKE, | MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |

---

Christopher M. Drake and Richard S. Stempel, STEMPEL & DOTY, PLC, for plaintiff.

Joseph E. Flynn and Leonard J. Schweich, JARDINE, LOGAN & O'BRIEN, P.L.L.P., for defendants.

Plaintiff John Cartier brings claims of excessive force, assault, and battery against defendants Ryan George and Ryan Arbuckle, both of whom are employed as police officers by the City of White Bear Lake.[1] Defendants move for summary judgment on all of Cartier's claims. For the reasons that follow, the Court grants the motion.

I. BACKGROUND

On the night of July 7, 2007, Cartier was out for a ride on his Harley-Davidson motorcycle. Cartier Dep. 14-17. After stopping at a bar in Stillwater for a drink, Cartier headed

---

[1]Pursuant to the parties' stipulation, the Court dismissed all of Cartier's claims against the City of White Bear Lake, as well as all of Cartier's claims against George and Arbuckle save for his claims of excessive force under the Fourth Amendment and assault and battery under state law. *See* Docket No. 34; *see also* Docket No. 27 at 1. The Court expresses its appreciation to the parties for working together to narrow the matters in dispute.

for home, eventually traveling west on County Road E in White Bear Lake. Cartier Dep. 14-15, 17. George was in a squad car traveling east on County Road E when he observed Cartier and, according to George, determined that Cartier was traveling over the speed limit. George Dep. 65. (After he was arrested, Cartier was recorded on the squad-car video saying that "I understand I was going too fast; I understand I was over the speed limit." *See* Flynn Aff. Ex. E.[2] Nevertheless, Cartier now denies that he was speeding. Cartier Dep. 17, 28.) George executed a U-turn and came up behind Cartier as Cartier was approaching an intersection. George Dep. 66. Cartier was in the right lane. Cartier Dep. 18. For safety reasons, George did not want to stop Cartier until he cleared the intersection. George Dep. 66, 81.

As Cartier approached the intersection, the traffic light turned green, Cartier accelerated through the intersection and, without signaling, Cartier moved into the left lane of County Road E to pass two motorcyclists traveling in the right lane. Cartier Dep. 18, 22. After Cartier cleared the intersection, George activated the lights on his patrol car to execute a stop of Cartier. George Dep. 82. At the moment that George activated the lights, Cartier was directly in front of George and closer to George than the two motorcyclists whom Cartier was attempting to pass. Cartier Dep. 24; Flynn Aff. Ex. E. After George activated the lights, Cartier continued accelerating, while the two motorcyclists pulled over almost immediately. Cartier Dep. 24-25; Flynn Aff. Ex. E. After passing the two motorcyclists, Cartier swerved back into the right lane and passed a car traveling in the left lane. Cartier Dep. 25-26. Cartier admits that, when he

---

[2]The Court's recitation of the facts is based in part on a squad-car video of George's pursuit of Cartier and the subsequent traffic stop. *See* Flynn Aff. Ex. E (DVD of squad-car video). Cartier testified that the video is a fair and accurate depiction of the events in question. Cartier Dep. 25.

passed the car, he was aware that there was a police car behind him with its emergency lights activated. Cartier Dep. 32. Cartier also admits that, as he was passing the car, George activated the patrol car's siren. Cartier Dep. 26. After Cartier passed the car, the car pulled over to the right lane and slowed down. Cartier Dep. 26; Flynn Aff. Ex. E. Unlike the motorcyclists and the car, Cartier did not slow down. Instead, Cartier put distance between his motorcycle and the pursuing patrol car before eventually coming to a stop approximately 25 seconds after passing the car.[3] Cartier Dep. 34, 38; Flynn Aff. Ex. E.

After pulling over, Cartier shut off his motorcycle and turned to face George's patrol car. Cartier Dep. 45. George, with his gun drawn, got out of the patrol car and instructed Cartier to put his hands in the air and get off the motorcycle. Cartier Dep 45; George Dep. 96. After initially putting his hands in the air, Cartier lowered his hands, dismounted, put his hands back in the air, and turned his back to George. Flynn Aff. Ex. E. A few seconds later, however, Cartier put his hands down and in front of his body — out of George's sight — and fumbled with something at his beltline. Flynn Aff. Ex. E; Cartier Dep. 47. At that moment, George raised the gun, pointed it at Cartier, and repeatedly stated, "I'm going to shoot you." Flynn Aff. Ex. E; Cartier Dep. 51-52. Cartier then took off his vest and tossed it toward his motorcycle. Flynn Aff. Ex. E; Cartier Dep. 48-49. George did not tell Cartier to remove his vest, and Cartier admits that he was disobeying George by lowering his hands and putting them in front of his body. Cartier Dep. 47-49.

---

[3]Cartier disputes that he accelerated away from the patrol car, contending that because he does not know the speed of the patrol car, it is not possible to tell whether he accelerated. Cartier Dep. 26-27. Cartier admitted, however, that he gained distance on the patrol car. Cartier Dep. 34, 38-39.

After taking off his vest, Cartier raised his hands and began backing up toward George. Flynn Aff. Ex. E; Cartier Dep. 52. Cartier then dropped his hands back down to his sides and crossed his arms in front of his body near his waistline, again disobeying George's command to keep his hands in the air. Flynn Aff. Ex. E; Cartier Dep. 53, 56. George ordered Cartier to get down on his knees. Cartier Dep. 56-57. Cartier responded by getting down on one knee, but did not get down on both knees as George had ordered. Cartier Dep. 57.

After getting down on one knee, Cartier put his hands back in the air, but then almost immediately lowered them again. Flynn Aff. Ex. E; Cartier Dep. 57, 59. With his hands lowered and at least partially obscured in front of his body, Cartier turned toward George and said, "Go ahead and shoot me." Cartier Dep. 59-60. Cartier then raised his hands back in the air. Cartier Dep. 60.

Cartier did not keep his hands in the air for long, though. While George radioed for backup and got out his Taser gun, Cartier lowered his hands, took off his glasses, and tossed them toward his motorcycle. Flynn Aff. Ex. E; Cartier Dep. 62; George Dep. 106-08. After tossing his glasses, Cartier momentarily put his hands on his head, but then almost immediately lowered them again to a position in front of his body, out of sight of George. Flynn Aff. Ex. E; Cartier Dep. 62-63. Cartier kept his hands down and in front of his body for approximately 15 seconds while George slowly approached him. Flynn Aff. Ex. E. Cartier eventually put his hands out to his sides and then back on his head. Flynn Aff. Ex. E. Cartier then got down on both knees, finally obeying the command that George had given almost a minute earlier. Flynn Aff. Ex. E; Cartier Dep. 66-67.

Meanwhile, Arbuckle arrived on the scene in his squad car. Arbuckle approached Cartier from behind with a pair of handcuffs. Flynn Aff. Ex. E. Apparently in response to a command from one of the officers, Cartier put his hands behind his back. Cartier Dep. 69. Arbuckle reached forward and placed his hand on Cartier's shoulder.[4] Cartier Dep. 74. Cartier rose up and turned toward Arbuckle, at which point George shot the Taser at Cartier. Flynn Aff. Ex. E; Cartier Dep. 74-75. After being shot with the Taser, Cartier went to the ground, where the officers turned him onto his stomach and handcuffed him. Flynn Aff. Ex. E.

II. ANALYSIS

*A. Standard of Review*

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

---

[4] In his memorandum, Cartier repeatedly characterizes Arbuckle's touch as a push. No evidence in the record supports this description. At no time during his deposition did Cartier describe being pushed by Arbuckle. Instead, when asked to describe what it felt like when Arbuckle touched him, Cartier testified that "I believe what it was is he startled me." Cartier Dep. 76. The video also fails to support any claim that Arbuckle pushed Cartier. As the video demonstrates, upon being touched by Arbuckle, Cartier did not appear to lose his balance or pitch forward, but rather appeared immediately to rise up and turn toward Arbuckle. Flynn Aff. Ex. E.

-5-

## B. Section 1983

Cartier brings a claim under 42 U.S.C. § 1983, alleging that George and Arbuckle used excessive force when George shot him with the Taser.[5] A claim that an officer has used excessive force in the course of an investigatory stop and arrest is analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). An officer's use of force is not excessive, and thus not in violation of the Fourth Amendment, if it was objectively reasonable under the particular circumstances. *Id.* at 397.

Circumstances relevant to the reasonableness of the officer's conduct include the severity of the crime, the danger that the suspect posed to the officer or others, and whether the suspect was actively resisting arrest or attempting to flee. *Id.* at 396. Whether an officer's use of force is reasonable is determined from the perspective of a reasonable officer at the scene, and not with the benefit of hindsight. *Id.* Courts must place themselves in the officer's shoes, and "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgements — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Applying these standards, the Court concludes that the officers' actions did not violate the Fourth Amendment. Indeed, if anything, the officers deserve to be commended for showing restraint. There is no dispute that George's initial stop of Cartier was lawful.[6] Having the right

---

[5] In his memorandum, Cartier suggests that the officers also violated the Fourth Amendment in other ways, such as by placing their knees on his back while they handcuffed him. At oral argument, however, Cartier conceded that if the Tasing was not a Fourth Amendment violation, then none of the officers' other actions violated the Fourth Amendment.

[6] Cartier denies that he was speeding, but he admits that he changed lanes without
(continued...)

to make the initial traffic stop, George also had "the right to use some degree of physical coercion or threat thereof to effect" the stop. *Graham*, 490 U.S. at 396. Reasonably believing that Cartier had been trying to flee from a lawful traffic stop, Graham ordered Cartier to keep his hands in the air and get down on his knees. Cartier responded by acting in a bizarre and unpredictable manner. The video shows, and Cartier admits, that he put his hands down at least five times in violation of George's command and that he did not get down on both knees until nearly a minute after being told to do so. Moreover, Cartier did not merely put his hands down; he repeatedly put his hands in front of his body (out of George's sight) and repeatedly fumbled around near his beltline, where he easily could have been carrying a weapon. At one point, Cartier kept his hands down and in front of his body for a period of approximately 15 seconds. He was fortunate that he was not shot by George. In addition, with George's revolver trained on him, and knowing that he was supposed to have his hands in the air, Cartier took off his vest and glasses and tossed them toward his motorcycle. Most disturbing of all, Cartier turned toward George — an armed police officer — and said, "Go ahead and shoot me."

A reasonable officer could easily have concluded that Cartier posed a threat. Cartier had apparently fled from George's initial attempts to pull him over. After finally stopping, Cartier repeatedly defied George's simple instructions to kneel and put his hands in the air.[7] A

---

[6](...continued)
signaling, and he later pleaded guilty to a misdemeanor charge of improper lane change. Cartier Dep. 18, 120. This is sufficient to justify the initial traffic stop. *United States v. Alcantar*, 271 F.3d 731, 736 (8th Cir. 2001) (any traffic violation, no matter how minor, provides a police officer with probable cause to stop the driver of the car, and the officer's subjective motivation is irrelevant).

[7]Cartier now contends that physical limitations made it difficult for him to kneel and keep
(continued...)

reasonable officer would be justified in concluding that Cartier's repeated fumbling in front of his body was an attempt to draw a weapon. Finally, under the circumstances, a reasonable officer could conclude that Cartier's statement "go ahead and shoot me" was aggressive and confrontational. These are exactly the kind of "tense, uncertain, and rapidly evolving" circumstances that must be taken into consideration in assessing the reasonableness of an officer's use of force. *See Graham*, 490 U.S. at 396-97. In light of Cartier's strange, noncompliant, and potentially threatening behavior, George's action in firing the Taser when Cartier began to rise up and turn toward Arbuckle was reasonable.

Cartier contends that it is unreasonable to shoot a Taser at an unarmed suspect with no warning. *See Brown v. City of Golden Valley*, 574 F.3d 491, 497-98 (8th Cir. 2009) (affirming denial of summary judgment on qualified-immunity grounds where an officer used a Taser on a woman who was allegedly sitting quietly in a car with her seat belt fastened, speaking to a 911 operator). But Cartier knew that George was pointing a weapon at him; indeed, Cartier alleges that, at the beginning of the traffic stop, George repeatedly threatened to shoot him. Cartier was thus well aware that he was facing a threat of force if he did not comply with George's commands. More importantly, Cartier ignores the fact that George did not *know* that Cartier was unarmed until after Cartier was handcuffed. As Cartier's earlier actions had already established that he posed a threat to the officers, George's response to Cartier's final, sudden movement was reasonable under the circumstances. *See Cook v. City of Bella Villa*, 582 F.3d 840, 850 (8th Cir.

---

⁷(...continued)
his hands in the air. Cartier admits, however, that he never told George that he was physically unable to comply with George's instructions. Cartier Dep. 80. Moreover, Cartier's physical limitations do not explain why he initially disregarded George's instructions while still standing, why he repeatedly put his hands outside of George's sight, or why he fumbled at his beltline.

2009) (recognizing that the summary application of force is constitutionally permissible when an officer's safety is placed in jeopardy).

Cartier also disputes that he was intentionally trying to flee from George on his motorcycle. But the reasonableness of George's actions must be judged not from Cartier's perspective, but from the perspective of a reasonable officer on the scene. *See Graham*, 490 U.S. at 396-97. The squad video and Cartier's testimony demonstrate that George could reasonably have concluded that Cartier was trying to flee. Cartier was directly in front of George when George activated the lights on his patrol car. Cartier then proceeded to pass two motorcycles on the right and a car on the left, all the while increasing the distance between himself and George. Both the motorcycles and the car pulled over while Cartier continued down the road. Whether or not Cartier was in fact trying to flee, the evidence in the record demonstrates that George could reasonably have reached that conclusion.[8]

Having found that the use of the Taser was reasonable, the Court grants defendants' motion for summary judgment on Cartier's Fourth Amendment claim.

### C. State-Law Claims

Cartier also brings state-law claims of assault and battery. George and Arbuckle move for summary judgment on the basis of official immunity. "Under Minnesota law, official immunity protects police officers engaged in law enforcement efforts unless they act with subjective malice." *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006). In contrast to the inquiry under the Fourth Amendment, Minnesota's test for official immunity is subjective. *Id.*

---

[8]The Supreme Court has made it clear that an officer's subjective motives are irrelevant. *Graham*, 490 U.S. at 397. Thus, it does not matter whether George in fact believed that Cartier was trying to flee, so long as a reasonable officer could have so believed.

Cartier points to no evidence of subjective malice.  Instead, Cartier relies solely on his argument that George's and Arbuckle's actions were objectively unreasonable, contending that a jury could infer from their objective unreasonableness that they acted with subjective malice.  As the Court has already found, however, George and Arbuckle did not act unreasonably.  Moreover, nothing in the record suggests that either officer harbored any ill will toward Cartier or otherwise was motivated by any unlawful or malicious motives.  Thus, there is no basis for a jury to conclude that George and Arbuckle knowingly violated Cartier's rights.  *Cf. Wertish*, 433 F.3d at 1067 ("the district court properly granted summary judgment dismissing Wertish's state law claims because nothing in the record suggests other than an honest law enforcement effort by peace officers faced with uncertain circumstances" (citation and quotations omitted)).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion for summary judgment [Docket No. 21] is GRANTED.
2. Plaintiff's complaint [Docket No. 1] is DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 10, 2010   s/Patrick J. Schiltz
                           Patrick J. Schiltz
                           United States District Judge